# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.S. and D.S.**

**No. 18-1006** (Braxton County 17-JA-26 and 17-JA-27)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.S., by counsel Jared S. Frame, appeals the Circuit Court of Braxton County's October 24, 2018, order terminating her parental and custodial rights to B.S. and D.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), David Karickhoff, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she made substantial progress in her improvement period and when she had a bond with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the DHHR filed a child abuse and neglect petition against petitioner in 2009 regarding B.S.[2] At some point, petitioner was granted an improvement period. Petitioner successfully completed her improvement period, and the child was returned to her care after the petition against her was dismissed.

In August of 2017, the DHHR filed the instant child abuse and neglect petition against petitioner and the father. According to the petition, the children's health or welfare was threatened or harmed by petitioner's refusal to provide the children with the necessary food,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]D.S. was not born until after the dismissal of the prior proceedings.

1

clothing, shelter, supervision, medical care, or education. Specifically, the DHHR alleged that petitioner had a substance abuse problem and had twice been arrested for related issues. Petitioner was first arrested in January of 2017 for driving under the influence with B.S. in the car. She was later arrested again in March of 2017 for a probation violation and possession of a controlled substance without a valid prescription. Petitioner pled guilty to the charges, was sentenced to ninety days of incarceration, and was subsequently released in July of 2017. The DHHR concluded that the children's welfare was threatened due to petitioner's arrests and continued use of illegal controlled substances.

The circuit court held an adjudicatory hearing in September of 2017, wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. As part of the terms and conditions, petitioner was required to remain drug and alcohol free, participate in a psychological evaluation and follow the recommendations made, participate in parenting and adult life skills classes, obtain and maintain employment and suitable housing, attend Narcotics Anonymous ("NA") or Alcoholics Anonymous ("AA") sessions until she could enroll in a long-term inpatient substance abuse treatment program, and successfully complete a long-term inpatient substance abuse treatment program. Petitioner was also granted supervised visitation with the children contingent on her ability to remain drug and alcohol free.

Petitioner initially complied with her improvement period and entered a long-term inpatient substance abuse treatment program. However, despite petitioner's successful completion of the treatment program, she relapsed only a short time after her release. The DHHR filed a motion requesting that the circuit court terminate petitioner's improvement period. After holding a hearing on the motion in August of 2018, the circuit court terminated petitioner's improvement period and set the matter for disposition.

The circuit court held a dispositional hearing in September of 2018. Petitioner failed to attend but was represented by counsel. Counsel for petitioner requested a continuance due to petitioner's absence, and the circuit court denied the same. A service provider testified that petitioner completed a six-month inpatient rehabilitation program, but ceased complying with services approximately one month following her release from the program. Petitioner had not attended any parenting or adult life skills classes since June of 2018 and she was also fired from her employment. Testimony established that petitioner had resumed abusing drugs and, immediately following the hearing on the DHHR's motion to terminate petitioner's improvement period, tested positive for methamphetamine and tetrahydrocannabinol ("THC"). A second service provider testified that petitioner attended two supervised visits with the children in April of 2018, but subsequently ceased participating. A forensic psychologist testified that, after performing a psychological evaluation of petitioner, he determined petitioner's prognosis for correcting her parenting issues or developing the ability to properly parent her children was very poor. The psychologist stated that, given petitioner's substance abuse, she was unable to keep the children safe.

After hearing evidence, the circuit found that, while petitioner had made significant strides in the case and attempted to overcome her drug addiction, she failed to follow through

2

with treatment. The evidence established that petitioner continued to associate with drug users, failed to comply with services, and remained addicted to drugs, which negatively affected her ability to properly parent the children. Finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that it was contrary to the children's best interest to remain in her care, the circuit court terminated petitioner's parental rights. It is from the October 24, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

In her brief on appeal, petitioner argues that the circuit court erred in terminating her parental rights when she had "almost completed" her improvement period.[4] Despite her relapse after intensive treatment, petitioner avers that she was willing to comply but needed additional services. Further, petitioner argues that a DHHR worker and service provider testified that petitioner had a strong bond with the children and, as such, additional services were warranted before terminating her parental rights. We disagree.

---

[3]The father is currently participating in an improvement period. Should he not successfully complete the improvement period such that reunification is possible, the concurrent permanency plan is adoption by the great-aunt and great-uncle.

[4]In passing, petitioner states that the circuit court erred in failing to grant her a continuance at the dispositional hearing. However, petitioner fails to cite to any authority demonstrating that she should have been granted a continuance. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . ." *State v. Kaufman*, 227 W. Va. 537, 555, n.39, 711 S.E.2d 607, 625, n.39 (2011) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Accordingly, we decline to address this argument.

To begin, petitioner fails to demonstrate that she was entitled to a post-dispositional improvement period. Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Here, petitioner was granted a six-month post-adjudicatory improvement period and a three-month extension. As such, she was required to demonstrate a substantial change in circumstances in addition to her likelihood of fully participating in an improvement period in order to be granted a post-dispositional improvement period. However, in her brief on appeal, petitioner does not indicate where in the record she established any substantial change in her circumstances. Moreover, she fails to demonstrate that she was likely to fully participate in an improvement period. The record establishes that petitioner entered and successfully completed a long-term inpatient substance abuse treatment program. However, soon after being released, petitioner returned to abusing drugs. Petitioner participated in only two supervised visits with the children in April of 2018 and failed to visit with them thereafter. Further, petitioner ceased participating in adult life skills and parenting classes after June of 2018. As such, despite petitioner's argument to the contrary, she failed to demonstrate that she was likely to participate in a post-dispositional improvement period given her failure to comply with nearly every term and condition of her post-adjudicatory improvement period. Accordingly, we find no error in the circuit court's decision to deny petitioner's request for a post-dispositional improvement period.

We likewise find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

As mentioned above, although petitioner initially complied with her improvement period, she relapsed in her drug abuse and ceased participating in any services. Indeed, petitioner only attended two supervised visits with her children and failed to attend any services after June of 2018. While petitioner argues that her parental rights should not have been terminated given the substantial progress she made before her relapse, we have previously noted that "it is possible for

an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In the Interest of Carlita B.*, 185 W. Va. 613, 626, 408 S.E.2d 365, 378 (1991) (quoting *W. Va. Dep't of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Moreover, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). We have further held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Here, despite having been granted numerous services throughout two proceedings, petitioner ultimately failed to demonstrate that she improved her overall attitude or approach to parenting or responded to any rehabilitative efforts. Although petitioner showed improvement at times, the circuit court was not required to exhaust any speculative possibility of improvement in light of the children's welfare and petitioner's dismal performance. Accordingly, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future.

To the extent petitioner argues that the circuit court should not have terminated her parental rights based upon her bond with the children, we note that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Kristin Y.*, 227 W. Va. at 560, 712 S.E.2d at 57, syl. pt. 5. Despite any bond between petitioner and the children, the circuit court found that termination of petitioner's parental rights was in the best interests of the children given petitioner's inability to address the conditions of abuse during the proceedings and the lack of reasonable likelihood that she would do so in the near future. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Therefore, petitioner is entitled to no relief.

Lastly, because the proceedings regarding the father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as

to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 24, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison